# MINNEAPOLIS LEAGUE OF CATHOLIC WOMEN v. L. F. SCHAFHAUSEN AND ANOTHER.[1]

February 27, 1925.

No. 24,398.

**Failure to adopt plans and specifications immaterial when.**

1. Where, before the work progressed very far, the parties adopted adequate plans which governed and controlled the contractor until his abandonment of the work for other reasons, it is immaterial in an action on a building contract that, to start with, plans and specifications may not have been actually agreed upon.

**Contracts construed as fixing price to defendant.**

2. The controlling contracts construed to obligate defendant to build for the fixed price of $20,000 rather than upon a cost plus basis.

*Headnote 1. See Building Contracts, 9 C. J. p. 698, § 11 (1926 Anno).

Headnote 2. See Building Contracts, 9 C. J. p. 709, § 39.

Action in the district court for Hennepin county to recover $8,494.79 against defendant L. F. Schafhausen, and for $5,000 against defendant Massachusetts Bonding & Insurance Company. The case was tried before Bardwell, J., who ordered judgment in favor of plaintiff. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Arthur M. Higgins*, for appellants.

*Loring & Anderson* and *R. A. Scallen*, for respondent.

STONE, J.

Action for damages against a contractor and his surety because of the former's abandonment of a building contract. The work was completed by plaintiff, the owner. After a trial by the court it was awarded a recovery of the excess of the cost over the contract price. Defendants appeal from the order denying them a new trial.

[1]Reported in 202 N. W. 705.

Plaintiff is a charitable corporation conducting a settlement house in Minneapolis. During the summer of 1921 there were negotiations between plaintiff and Mr. Schafhausen (hereinafter referred to as the defendant), for the removal of the old house to the rear of the premises in question and for the construction of a new two story, frame, stucco building upon the old site. These negotiations resulted in September in the contract out of which this case arises. It was not subscribed by defendant, but was prepared by him and submitted to and signed by plaintiff's president. Thereupon defendant proceeded with the work. It is probably another case where litigation could have been prevented if counsel had been resorted to at the outset for prevention rather than later for cure. The contract is crudely drawn in two particulars. In the first place, while obligating defendant for the removal of the old and the erection of the new building, it failed to identify the controlling plans and specifications or to make it clear whether they had been agreed upon or were to be adopted later. In the latter event there would have been a mere agreement to attempt to contract in the future and therefore no contract at all. Shepard v. Carpenter, 54 Minn. 153, 55 N. W. 906.

The next difficulty arising from the contract itself is that, while defendant seemingly obligated himself to accept $16,000 as the price of the completed job, the sum according to the contract was to be paid in monthly instalments as follows:

"Said party of the second part (defendant) shall on the first of each calendar month, furnish to the party of the First Part (plaintiff), a statement showing all bills incurred in the erection, alteration, removal or repair of the above mentioned building or buildings, plus ten per cent commission, for period covering elapsed calendar month.

"This shall constitute the above mentioned monthly instalment, as due Party of the Second Part; and shall upon approval, be paid in full by Party of the First Part, thereon."

When the contract was submitted to plaintiff, the contract price was referred to as "approximately" $16,000. The qualification is

now immaterial because of the finding that "approximately" was stricken out upon the insistence of plaintiff's president before signing the document.  About September 15, 1921, and immediately upon procuring plaintiff's assent to the contract, defendant proceeded with the work and continued it until March 11, 1922. Thereafter and on April 15, 1922, he gave plaintiff written notice of his abandonment of the work and demanded settlement on a cost plus basis.

1.  It is futile for defendant to attempt escape from the contract because the writing itself does not identify the plans and specifications or because none may have been agreed upon to start with.  Before the work had progressed very far, plans had been prepared by defendant and adopted by both parties to control the work.  They were used for that purpose without disagreement concerning them until defendant's abandonment of the job when it was seven-eighths complete.  The final breach was due to no disagreement concerning any detail of mechanical construction or performance nor the character of the materials used or to be used.  In that situation, it is too clear for argument that the initial failure of the contract to identify the plans and specifications or to say that they had been agreed upon as a part of the contract is of no avail to defendant.  The defect was made good by the assent of the parties to the plans later adopted by them under and for the purposes of the contract. Robertson v. Burton, 88 Minn. 151, 92 N. W. 538.

2.  We proceed now to consider the cost plus argument advanced for defendant and here there is to be noted an additional and important fact.  The original contract, while requiring the removal of the old building, did not impose upon defendant the obligation to provide a foundation for it.  He did make the necessary execavation and foundation, although neither was required by the original contract.  This circumstance and others resulted in a controversy which on January 27, 1922, was settled by the parties, plaintiff and defendant, and a second and supplementary contract was signed.  It recited the original contract, the partial completion of the new building pursuant thereto and the fact that a "dispute" had arisen.  In consideration of the recited premises, among them the "dispute,"

defendant confirmed his obligation to erect the new building. The contract then proceeded as follows:

"Second. That the agreed price and allowance for all extras furnished or to be furnished is the sum of four thousand dollars ($4,000), an itemized account of which is hereto attached, marked Exhibit 'B' and made a part hereof.

"Third. That the said First Party (plaintiff) agrees to pay to said party of the Second Part (defendant) the additional sum of four thousand ($4,000) over and above the contract price referred to in Exhibit 'A.'

"Fourth. In consideration of the total sum paid under said agreements, Exhibit 'A' and this agreement, said Second Party shall deliver said premises as herein provided to said First Party free and clear from all claims, demands or obligations of any kind for labor, material or any other claim of any nature whatsoever.

It is further understood and agreed that the total sum to be paid said Second Party as herein provided shall include all commissions or compensation due or to become due and to be paid to him for any services rendered by him in connection with the erection of said building."

Exhibit B referred to in and accompanying this supplemental contract was a memorandum signed by defendant himself, enumerating the extras in question. It states that plaintiff and defendant "have gone over the plans and this covers all additional that was put on the two buildings at the present time, January 24th." (1922).

It is impossible to escape the conclusion, and it was so found below, that this contract was a purposeful settlement of the whole situation as of its date. It was settlement of unliquidated claims instead of an agreement for the payment, in settlement, of a sum less than was admittedly due. The case therefore, on this point, is not within the rule of Demars v. Musser-Sauntry L. & M. Co. 37 Minn. 418, 35 N. W. 1; Ness v. Minnesota & Colorado Co. 87 Minn. 413, 92 N. W. 333, and other similar cases cited for defendant. To start with, plaintiff had his demands for extras, the amount of which was unliquidated, and as to some of which there

might have been a question of liability. By exhibit B, defendant agreed to accept and plaintiff to pay $4,000 in settlement. The presence of adequate consideration is undeniable. The result was to increase the contract price from $16,000 to $20,000.

Taking the two instruments together and giving to every part of each of them that effect which the language seems to require in the circumstances to which it must be applied, we conclude that defendant's agreement was to do the work for the fixed price stated, now $20,000. The provision in the original contract for the monthly payments of the bills incurred to date "plus 10% commission" is an argument to the contrary. It is overcome, however, by other portions of the documents. In the first place, defendant was obligated to complete the job. Plaintiff's covenant for payment required $16,000 (increased to $20,000 by the second contract) and no more. The second agreement referred to the first one as having fixed the "contract price" and added $4,000 to that "contract price" and not to any amount to be determined upon a cost plus basis. The whole $16,000 plus $4,000 was the "total sum" to be paid under both agreements and was expressly inclusive of "all commissions or compensation due or to become due and to be paid to" defendant under the contract. That certainly makes impossible defendant's contention that he is entitled to compensation on a cost plus basis. His agreement to accept $20,000 and to do the work for that sum is too clear for successful attack. Otherwise, why, in the second contract, did defendant agree to turn over the work on both buildings "free and clear of all claims" in consideration, not of cost plus ten per cent, but upon the payment of the original "contract price" plus $4,000.

We are not overlooking the claim for defendant that he did much work, particularly on the old building, not within the original contract. The second one had to do exclusively with extras on the old building. The price was fixed by that contract and the district court very properly refused to make a new one for the benefit of defendant. In passing, it is interesting to note that when, on April 15, 1922, defendant attempted to repudiate his contract and put his claims in writing, he made no mention of lack of or deficiency

in plans or specifications, no claim for extras not covered by the second agreement and none for unforeseen difficulties. On the contrary, he justified his repudiation solely by some fanciful fraud of plaintiff inducing the second agreement. His sole effort then was, for the supposed fraud, to eliminate the second contract and return to and take position upon the original agreement, construed as a cost plus undertaking.

For the reasons stated the order appealed from is affirmed.